JOURNAL ENTRY and OPINION
Appellant Terry Moore appeals the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, granting permanent custody of his daughter, Angel Moore, to appellee the Cuyahoga County Department of Children and Family Services. Moore assigns the following four errors for our review:
 I. THE COURT'S FINDING THAT ANGEL MOORE COULD NOT OR SHOULD NOT BE PLACED WITH HER PARENTS WITHIN A REASONABLE TIME IS WHOLLY CONTRADICTED BY THE RECORD.
 II. NO CLEAR AND CONVINCING EVIDENCE SUPPORTED THE TRIAL COURT'S "REASONABLE EFFORTS" FINDING.
 III. THE COURT VIOLATED PUBLIC POLICY AND STATUTORY MANDATES BY FAILING TO IMPOSE THE LEAST DISRUPTIVE ALTERNATIVE NECESSARY TO PROTECT ANGEL MOORE WHILE MAINTAINING HER FAMILY STRUCTURE.
 IV. THE COURT'S ADJUDICATORY FINDING THAT ANGEL MOORE WAS DEPENDANT IS UNSUPPORTED BY SUFFICIENT EVIDENCE.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
Appellee Cuyahoga County Department of Children and Family Services (CCDCFS) removed Angel Moore (child) from the custody of her mother and legal father, appellant Terry Moore[1], on January 22, 1998. On February 4, 1998, appellee Cuyahoga County Department of Children and Family Services (CCDCFS) filed a complaint alleging the child to be dependant and requesting permanent custody be awarded to CCDCFS. The court awarded emergency custody of the child to CCDCFS on February 6, 1998. However, because the matter could not be concluded within ninety days as required by Juvenile Rule 34, the court dismissed the matter on May 21. 1998.
On May 22, 1998, CCDCFS filed a second complaint alleging the child to be dependant and requesting permanent custody be awarded to CCDCFS. After a hearing held on May 28, 1998, the court awarded CCDCFS emergency custody. On July 24, 1998, Moore filed a motion to vacate the trial court's emergency custody order. The trial court denied Moore's motion following a hearing held July 27, 1998.
The trial court held a hearing at CCDCFS' request for permanent custody on October 8, 1999. The parties agreed to combine the adjudicatory and dispositional hearings. The parties also agreed to incorporate the testimony from the July emergency custody hearing into the permanent custody proceedings.
CCDCFS presented six witnesses — Patricia Koch, Michele Lee, Dr. Thomas Anuszkiewicz, Dr. Lalit Chaube, and Pamela Wade.[2]
Michele Lee, the social worker assigned to the case, testified. CCDCFS removed the child from her parents' care due to allegations the mother threatened to kill Moore, her child and herself. Lee testified CCDCFS placed the child with her maternal grandmother, but removed the child from her care when a neighbor reported the grandmother threatened to throw the child out of the window. Lee indicated the only other relative considered a potential placement expressed no interest in caring for the child. Lee testified CCDCFS developed a case plan for reuniting the child with Moore and the mother. The plan required Moore and the mother to complete a
Lee testified the mother completed her drug and alcohol assessment but failed to complete the treatment recommended as a result of the assessment. Lee stated the treatment program dropped the mother for lack of attendance. Lee testified the mother failed to complete her parenting class. The mother attended the classes regularly, but failed to demonstrate appropriate parenting skills. Further, Lee stated the child could not be left alone with the mother due to the mother's mental status. Lee testified CCDCFS investigated alternative care-givers to stay with the mother and child while Moore worked. The Moores provided CCDCFS with the names. Although each of the suggested alternative care-givers said they would be able to check on the child during the day, they were not able to commit to staying in the home on a regular basis. Lee testified the mother's mental status and Moore's drinking were the primary reasons for keeping the child from being reunited with her parents.
Patricia Koch, coordinator and therapist of Metro Health's parenting program, testified Moore did a good job parenting, but the mother did not. Koch testified the mother perceives the child as a rival for Moore's affection and inappropriately attributed adult thinking processes to the child. Koch testified Moore told her the mother left the child unattended at night to go drinking while Moore worked, became enraged if Moore attended to the child's needs before attending to her needs, and referred to the child as a little bitch. Moore also told Koch that the mother threatened to kill him, the child and herself. Koch testified Moore came to at least one group session and one individual session smelling of alcohol. Koch stated Moore needs to be sober to care for the child.
Dr. Anuszkiewicz, testified that he had evaluated Moore. He stated Moore took the mother's threats seriously. He also testified Moore volunteered his history of problems with alcohol, including several convictions for driving under the influence (DUI). He testified, based on Moore's self reports, that he recommended Moore to complete an alcohol treatment program and continue with Alcohol Anonymous and agree to random urine screens, and if he remained with the mother, seek out marriage counseling. If he addressed those areas, the Doctor opined the father showed signs of being a responsible parent.
Dr. Chaube, the mother's treating psychiatrist, testified he met with the mother once a month beginning in June 1998. Based on her self reports, he diagnosed the mother as having adjustment disorder with depressed mood. Dr. Chaube testified the mother takes paxil, an anti-depressant drug. He said the mother's condition has improved, she's less anxious and depressed. He testified there was no reason why the mother could not take care of a child based on her mental illness. However, Dr. Chaube noted the mother would need continuing behavioral therapy.
Pamela Wade, local area baby sitter, testified the mother contacted her about providing daycare for the child on July 28, 1998. She said the mother explained the social worker did not want the child left alone with her while Moore was at work. Wade explained to the mother that she had an injury and was no longer able to care for children. She testified she received a call two days before the hearing from Moore. He asked if she could provide daycare for his daughter. Moore explained the social worker did not want the child left alone with the mother. Wade stated she realized this was the same family that contacted her in July. Wade stated during Moore's phone call she could hear the child's mother in the background yelling and telling Moore what to say. Wade testified Moore told her he worked the second shift and would need her to watch the child from 2:00 P.M. until 7:00 P.M. Wade said she asked why she would not be needed after 7:00 P.M. Wade said Moore told her because social workers would not come out for visits past that time, and would not notice the child was alone with the mother.
Moore presented four witnesses on his behalf — Jerry Layne, Mary King, Doreen Burtz and himself. Layne, Christine Moore's brother, testified he had a good relationship with Moore's family, was single, and lived one mile away from the family. He stated he worked second shift and Moore worked first shift. Layne testified he would be willing to move into the home to watch the child when Moore was at work. When asked if he would contact CCDCFS if the mother endangered the child, Layne stated if it meant protecting her, probably. Layne testified he believed the child would be safe with the mother because she quit drinking and was receiving medication for her mental health concerns.
Moore testified that his comments to Koch regarding the mother's instability led to CCDCFS removing the child from their care. He said he spoke to Koch in an attempt to get help for the mother. He requested they place her on medication to control her moods. Moore testified the mother's threat to kill the three of them occurred two months before he spoke with Koch and that the mother never made any additional threats. Further, Moore testified neither the mother nor he ever physically abused the child.
Following Moore's testimony he presented testimony from two leaders of parent support organizations. Mary King, director of Parents Utilizing Services for Help, testified she would be able to refer the Moores to various daycare providers. She also stated PUSH could help the Moores find other assistance based programs if required. Doreen Burtz, executive director of Informing our children, Inc., testified her organization could provide follow up services for the Moores upon reunification. She described follow up services as random home visits and support groups for parents.
On April 27, 1999, the court entered a decision awarding CCDCFS permanent custody of the child. The court's order found, based on the mother's mental health problem and the Moores' drinking problem, that neither parent was capable of providing proper and adequate care for the child, thus, the child could not and should not be placed with the parents in a reasonable time. Moore appeals the trial court's decision.
In his first, second, third and fourth assignments of error, Moore challenges the sufficiency of the evidence supporting the trial court's judgment to terminate his parental rights. Because we find these assignments have a similar basis in fact and law, we consider them concurrently.
To justify termination of parental rights and award permanent custody of a child who is neither abandoned nor orphaned to a public children's services agency, a juvenile court must find by clear and convincing evidence that: (1) the grant of permanent custody to the agency is in the best interest of the child; and (2) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. In re William S. (1996), 75 Ohio St.3d 95, 99, 661 N.E.2d 738, 741. Clear and convincing evidence is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re King (Aug. 11, 1999), Adams App. No. 99CA671, unreported, citing In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368; Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. See also Cincinnati Bar Assn. v.Massengale (1991), 58 Ohio St.3d 121, 122.
The standard of review for weight of the evidence issues, even where the burden of proof is `clear and convincing,' retains its focus upon the existence of some competent, credible evidence.Hawn v. Pleasant (May 28, 1999), Scioto App. No. 98CA2592, unreported, citing State v. Schiebel (1990), 55 Ohio St.3d 71, 74. Therefore, when reviewing awards of permanent custody to public children services agencies, judgments supported by some competent, credible evidence must be affirmed. In re Rowe (Jan. 30, 1998), Scioto App. No. 97CA2529, unreported, citing Jones v. Lucas CountyChildren Services Board (1988), 46 Ohio App.3d 85, 86.
Our review of the record reveals there was competent, credible evidence upon which the trial court could determine granting permanent custody of the child to CCDCFS is in the best interest of the child and that the child could not be placed with either parent within a reasonable time.
The evidence demonstrated Moore's wife, the child's mother, suffers from both depression and a borderline personality disorder. Further, the evidence showed the mother's disorder causes her to view the child as a rival for Moore's affection. During periods of mental instability, the mother made threats to kill both the child, Moore and herself. Additionally, the evidence demonstrated the mother's unwillingness to remedy the dangers her condition presents to the child. Though given several opportunities, the mother refused to attend counseling and failed to complete parenting classes.
The evidence also indicated Moore suffers from severe and chronic alcohol dependancy rendering him incapable of providing the child with appropriate care and protection. Dr. Anuszkiewicz diagnosed Moore as alcohol dependant. Moore admitted to several convictions for driving while intoxicated. Further, evidence demonstrated Moore attended numerous alcohol abuse treatment programs without success.
If it is shown by clear and convincing evidence that a parent has continuously and repeatedly failed to substantially remedy the conditions which led to the grant of temporary custody of the parent's child to CCDCFS, the court must find that the child cannot be placed with the parent within a reasonable time. R.C.2151.414(E)(1). The evidence presented before the juvenile court made clear that the conditions which led to the temporary custody order had not been rectified by Moore. Under the circumstances, we conclude that the trial court properly determined Moore's child could not be placed with either parent within a reasonable time.
We also find that CCDCFS made a good faith effort to implement the reunification plan as required by R.C. 2151.419. See In reGrant (Mar. 12, 1998), Cuyahoga App. No. 71946, unreported. A good faith effort has been defined as an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage. Id. CCDCFS established a case plan for the parents that required them to (1) participate in drug and alcohol abuse assessment and follow through with all treatment recommendations; (2) complete a parenting education program and, (3) participate in a psychological evaluation. The mother failed to attend the parenting education classes and showed no interest in psychological counseling until four months prior to the permanent custody hearing. Moore attended parenting education classes, but showed up with alcohol on his breath and refused to acknowledge his drinking as a problem, even when informed that he needed to abstain from drinking to demonstrate his ability to properly care for his daughter. Thus, we conclude the parents' failure to satisfactorily complete the case plan was due to a lack of commitment on their part, not to any lack of commitment or wrongdoing by CCDCFS. Further, we conclude CCDCFS acted reasonably in not pursuing daycare or alternative in-home supervision for the child where the risk to the child posed by the mother had not significantly diminished and reunification was not imminent.
Based on our review of the record, we conclude the evidence overwhelmingly supports the trial court's decision to award permanent custody to CCDCFS. Accordingly, we overrule Moore's first, second, third, and fourth assignments of error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Juvenile Court Division, Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, P.J., and KENNETH A. ROCCO, J., CONCUR.
 ____________________________ PATRICIA ANN BLACKMON, JUDGE
[1] Appellant Terry Moore is the legal father because Angel was born during his marriage to Angel's mother. However, he is not Angel's biological father. CCDCFS served the biological father by publication because his whereabouts are unknown. The biological father made no efforts to establish paternity.
[2] Patricia Koch testified at the July 27, 1998 hearing drug and alcohol assessment and follow-through with any and all recommendations, have a psychological evaluation, and participate in parenting classes. Lee testified Moore completed the parenting classes. However, she stated her belief that Moore continued to abuse alcohol. She testified that she smelled alcohol on Moore in the court's waiting area although she was sitting a person away.